## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **ADAM ATKINS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:20-cv-00054-P-BP** |
| | § | |
| **FORT WORTH** | § | |
| **POLICE DEPARTMENT,** | § | |
| | § | |
| **Defendant.** | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Before the Court are Plaintiff's Complaint, ECF No. 1; Plaintiff's Response to the Show Cause Order, ECF No. 9; Defendant's Motion to Dismiss, ECF No. 18; and Plaintiff's "Motion to Request Mediation/Continuance," ECF No. 20, which the Court construes as Plaintiff's response to Defendant's Motion to Dismiss. After considering the pleadings and applicable legal authorities, the undersigned **RECOMMENDS** that United States District Judge Mark T. Pittman **GRANT** Defendant's Motion to Dismiss, **DISMISS** Plaintiff's federal law claims **WITH PREJUDICE**, and **DISMISS** his state law claims **WITHOUT PREJUDICE**, but also grant Plaintiff an opportunity to amend his Complaint.

### I.      BACKGROUND

This case concerns an allegedly false and malicious arrest. The factual description that follows comes from the Complaint, unless noted otherwise. *Pro se* Plaintiff Adam Atkins ("Atkins") claims that his neighbor assaulted him. ECF Nos. 1 at 2; 18 at 1. A Fort Worth police officer arrived at the scene of the assault, but instead of arresting the neighbor, he arrested Atkins for burglary of a habitation with the intent to commit another felony. ECF No. 18 at 1. Atkins filed

suit against the Fort Worth Police Department. Although the department is not a jural entity that can sue or be sued, the City of Fort Worth ("the City") appeared in this case. *See Combs v. City of Dallas*, 289 F. App'x 684, 686 (5th Cir. 2008) (police department cannot sue or be sued as a separate and distinct entity unless the city grants that capacity to the department). The Court proceeds as if Atkins had filed suit against the City, though the Court warns Plaintiff that the City, not its police department, is the proper legal entity to be named in any amended pleading. *See Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313–14 (5th Cir. 1991) (plaintiff entitled to amend complaint erroneously naming police department as defendant).

Atkins alleges that the City concealed evidence about a hate crime that his neighbor committed against him. ECF Nos. 1 at 4; 18 at 1. He also alleges that the City violated Tex. Gov't Code § 411.046 and 42 U.S.C. § 1983. ECF No. 1 at 4. The Court issued an order requiring Atkins to allege facts showing how the Court has subject matter jurisdiction over this case. ECF No. 8. Atkins filed a response, clarifying that his § 1983 claims are for false arrest and malicious prosecution, and further alleging that the City violated the Americans with Disabilities Act ("ADA") and Title VI of the Civil Rights Act of 1964 ("Title VI"). ECF No. 9 at 1–3.

Atkins properly filed suit in this Court based on federal question jurisdiction under 28 U.S.C. § 1331. ECF No. 1. Federal courts can assert jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Atkins alleges violations of 42 U.S.C. § 1983, the ADA, and Title VI. These are federal statutes, so his suit is a civil action arising under the laws of the United States, and this Court may hear it.

Under 28 U.S.C. § 1367(a), a federal court may assert supplemental jurisdiction over state law claims that are so related to the original claims that they form part of the same case or controversy, "[deriving] from a common nucleus of operative fact." *United Mine Workers of*

*America v. Gibbs,* 383 U.S. 715, 725 (1966). Here, in addition to Atkins's federal claims, he alleges false arrest, malicious prosecution, and violation of Tex. Gov't Code § 411.046. On the face of the pleadings, the federal and state law claims concern the same core factual issue: Atkins's arrest by Fort Worth police. *See* ECF No. 1. The claims are sufficiently related for purposes of § 1367(a), and this Court may exercise supplemental jurisdiction over the state law claims.

## II.    LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. The Rules require that each claim contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). A complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering a Rule 12(b)(6) motion, courts "take all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff . . . and ask whether the pleadings contain 'enough facts to state a claim to relief that is plausible on its face.'" *Yumilicious Franchise, LLC v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016) (quoting *id.* at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

In ruling on a Rule 12(b)(6) motion, a court may rely on the complaint, documents properly attached to the complaint or incorporated by reference and matters of which a court may take judicial notice. *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011). "The court may judicially notice [an adjudicative fact] that is not subject to reasonable dispute because it: (1) is generally

known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

There exists a "well-established policy that the plaintiff be given every opportunity to state a claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977)). It is federal policy to decide cases on the merits rather than technicalities, and thus when possible the Fifth Circuit has recommended that suits be dismissed without prejudice on Rule 12 motions. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *Hines v. Wainwright*, 539 F.2d 433, 434 (5th Cir. 1976) (vacating and remanding a Rule 12(c) dismissal with instructions to the district court to dismiss without, instead of with, prejudice). As a result, courts generally allow plaintiffs at least one opportunity to amend following a Rule 12 dismissal on the pleadings. *Great Plains Tr. Co.*, 313 F.3d at 329; *see Parker v. Allstate Ins. Co*., No. 3:16-CV-00892-CWR-FKB, 2017 WL 4287912, at *1 (S.D. Miss. Sept. 27, 2017) ("It is well-established that plaintiffs who fail to meet their burden on a motion for judgment on the pleadings and yet may still have a viable avenue to recover should be granted leave to amend their complaint and make their best case." (citation and internal quotation marks omitted)); *In re Online Travel Co. (OTC) Hotel Booking Antitrust Litig.*, 997 F. Supp. 2d 526, 548–49 (N.D. Tex. 2014) (dismissing for failure to state a claim without prejudice because dismissing with prejudice would be "too harsh a sanction").

A pro se plaintiff's pleadings are liberally construed. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A pro se complaint, "'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers . . . .'" *Id.* (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). If the district court determines that a plaintiff has pleaded his or her best case, however, the court does not err in dismissing a pro se complaint with prejudice. *Jones v. Greninger*, 188

F.3d 322, 326–27 (5th Cir. 1999) (citing *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998); *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986)).

### III.    ANALYSIS

#### A.    Atkins does not state a claim under 42 U.S.C. § 1983.

The Supreme Court has stated that the statutory language of § 1983 compels a broad construction because it speaks of deprivations of "*any* rights, privileges, or immunities secured by the Constitution and laws." *Dennis v. Higgins*, 498 U.S. 439, 443 (1991) (emphasis in original) (quoting 42 U.S.C. § 1983). To plead municipal liability under § 1983, the plaintiff must allege "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *See Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). The alleged policymaker must have final policymaking authority and take the place of the governing body in a designated area of city administration. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *Webster v. City of Hous.*, 735 F.2d 838, 841 (5th Cir. 1984). A city's governing body may delegate policymaking authority expressly or implicitly. *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984). The Fifth Circuit "has long distinguished between final decisionmaking authority and final policymaking authority" when establishing municipal liability. *Valle v. City of Hous.*, 613 F.3d 536, 542 (5th Cir. 2010). "Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Id.* (internal quotation marks omitted) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)).

Here, Atkins sues the City for false arrest and malicious prosecution under § 1983. He does not allege an official policymaker in his Complaint or his Response to the Show Cause Order. *See*

5

ECF Nos. 1, 9. Accordingly, he has not properly pleaded this element under the *Twombly*/*Iqbal* standard.

To hold a municipality liable, a plaintiff must also demonstrate the existence of an official policy or custom. *Piotrowski*, 237 F.3d at 579. "Official policy can arise in various forms. It usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *James v. Harris Cty.*, 577 F.3d 612, 617 (5th Cir. 2009) (quoting *id.*). Although a "single decision by a policy maker may, under certain circumstances, constitute a policy for which a municipality may be liable," this "'single incident exception' is extremely narrow and gives rise to municipal liability only if the municipal actor is a final policymaker." *Valle*, 613 F.3d at 542 (citations and brackets omitted).

A municipality's official policy is:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Johnson*, 958 F.2d at 94 (citation omitted). Plaintiff must specifically identify each policy that allegedly caused constitutional violations. *M.D. by Stukenberg v. Abbott*, 907 F.3d 237, 253 (5th Cir. 2018) (citation omitted).

Here, Atkins does not identify a policy or widespread practice that allegedly caused constitutional violations. In his "Motion to Request Mediation/Continuance," he "asserts absence of a policy . . . to protect citizens with special needs . . . as opposed to a particular policy which caused the violation." ECF No. 20 at 2. He does not identify any widespread practice caused by

6

the absence of any policy. Because he has not alleged facts that identify a policy or practice that caused constitutional violations, he has not properly pleaded this element.

Finally, to show that a policy is the moving force behind a constitutional violation, the plaintiff must show a "direct causal link between the municipal policy and the constitutional deprivation." *Piotrowski*, 237 F.3d at 580. "Every injury suffered at the hands of a municipal employee can be traced to a hiring decision in a 'but-for' sense . . . ." *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410 (1997). Therefore, to avoid imposing respondeat superior liability upon municipalities, the plaintiff must also show that the policymaker acted with "deliberate indifference" to the policy's known or obvious unconstitutional consequences. *Id.* at 407, 409–10. "For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (quoting *Smith v. Brenoettsy*, 158 F.3d 908, 912 (5th Cir. 1998)) (internal quotation marks omitted). "A showing of simple or even heightened negligence will not suffice." *Bd. of Cty. Comm'rs*, 520 U.S. at 407.

Here, because Atkins does not allege a policymaker or a policy, he cannot show a direct causal link between a municipal policy and a constitutional deprivation. He also cannot show that a policymaker acted with "deliberate indifference" to a policy's known or obviously unconstitutional consequences. He has not alleged that any policymaker was "aware of facts from which the inference could be drawn that a substantial risk of serious harm" existed and actually drew that inference. *See Estate of Davis*, 406 F.3d at 381; ECF Nos. 1, 9, 20. Because Atkins only offers conclusory statements and fails to allege sufficient facts to support these arguments, he has

not properly alleged all of the required elements of a § 1983 municipal liability claim. Accordingly, his claim should be dismissed.

### B.    Atkins does not state a claim under the ADA.

The ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Atkins alleges that the City and the police officer were aware of his disability and "regarded [him] as less credible than other witnesses by virtue of his disability." ECF No. 9 at 2. He does not offer any facts to support these allegations. Because he only offers conclusory allegations of disability discrimination, he has not stated a claim under the *Twombly*/*Iqbal* standard, and this claim should be dismissed.

### C.    Atkins does not state a claim under Title VI.

In his Response to the Show Cause Order, Atkins contends that the City "periodically receives federal funding grants through the [Community Oriented Policing Services] program, provided by the U.S. Department of Justice." ECF No. 9 at 3. This would subject the City to the requirements of nondiscrimination contained in Title VI. *Alexander v. Sandoval*, 532 U.S. 275, 278 (2001). "Section 601 of that Title provides that no person shall, 'on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity' covered by Title VI." *Id.* (quoting 42 U.S.C. § 2000d). The Supreme Court has implied a private cause of action under Title VI, but it exists "only for violations involving intentional discrimination." *Bisong v. Univ. of Hous.*, 493 F. Supp. 2d 896, 904 (S.D. Tex. 2007) (citing *Guardians Ass'n v. Civil Serv. Comm'n of City of New York*, 463 U.S. 582 (1983)); *see Alexander*, 532 U.S. at 279 ("private individuals may sue to enforce

§ 601 of Title VI and obtain both injunctive relief and damages"). In Title VI cases such as this one in which "the plaintiff does not allege any official policy of intentional discrimination, to receive damages, a plaintiff must allege that 'an appropriate person'—an official authorized to institute corrective measures—had 'actual knowledge' of the discrimination and responded with 'deliberate indifference.'" *Z.B. v. Irving Indep. Sch. Dist.*, No. 3:17-CV-2583-B, 2019 WL 2716504, at *3 (N.D. Tex. June 28, 2019) (quoting *Mohamed for A.M. v. Irving Indep. Sch. Dist.*, 252 F. Supp. 3d 602, 627 (N.D. Tex. 2017)) (internal quotation marks omitted).

Here, Atkins appears to argue that the City violated Title VI, but he does not allege facts, such as his race, color, or national origin, to support a claim under Title VI. He also does not allege any official policy of intentional discrimination, or any appropriate person with actual knowledge of the alleged discrimination who responded with deliberate indifference. To support his Title VI claim, he asserts that

> he was denied the right for representation by the police (Defendant), and that Defendant determined that Plaintiff was not worthy of representation by virtue of disability, specifically, by admitting to making the case a low-priority case in spite of the fact that evidence points to a crime committed by Baldwin which falls under the Texas Hate Crimes Act, and a witness, Judith Hallam, testifying to observing differential treatment.

ECF No. 9 at 4. These conclusory allegations do not satisfy the *Iqbal*/*Twombly* pleading standard, so this claim should be dismissed.

### D.    The City is immune from liability for claims of false arrest and malicious prosecution.

For the State of Texas, its agencies, and its political subdivisions—including the City—to be sued for negligence or intentional torts, the governmental unit must consent to the suit by waiving immunity to tort liability. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008) (citing *Hosner v. DeYoung*, 1 Tex. 764, 769 (1847)). The Texas Tort Claims Act provides a limited waiver of immunity, subject to specific damage caps, for property damage,

personal injury, and death claims arising from the "use or operation of a motor-driven vehicle or motor-driven equipment" or from "a condition or use of tangible personal or real property." Tex. Civ. Prac. & Rem. Code § 101.021. The Act provides that a municipality is liable for damages arising from its government functions, which include "police and fire protection and control." *Id.* § 101.0215. But a municipality is not liable for intentional torts, which include malicious prosecution and false arrest. Tex. Civ. Prac. & Rem. Code § 101.057 ("This chapter does not apply to a claim . . . arising out of assault, battery, false imprisonment, or any other intentional tort . . . ."); *Henderson v. Iowa Colony*, No. 01-15-00599-CV, 2016 WL 2586715, at *3 (Tex. App.—Houston [1st Dist.] May 5, 2016, no pet.) (recognizing malicious prosecution and false arrest as intentional torts).

Here, Atkins contends that the City is liable for false arrest and malicious prosecution. He argues that the police officer arrested him without reciting his *Miranda* rights and did not tell him why he was being arrested. ECF Nos. 1 at 4; 18 at 1. But he does not offer any reason that the City is not immune from liability for false arrest and malicious prosecution. Accordingly, the City cannot be liable for these claims, so they should be dismissed.

### E. Atkins does not state a claim under Tex. Gov't Code § 411.046 or the Texas Hate Crimes Act.

In his Complaint, Atkins cites the Texas Hate Crimes Act and Texas Government Code § 411.046, but he is unclear as to how these state law provisions apply to his claim. ECF No. 1 at 4. Liberally construed, his pleadings basically assert that his neighbor committed a hate crime against him, and the police should have arrested his neighbor instead of him. *See* ECF Nos. 1, 9. Section 411.046 of the Texas Government Code provides that local law enforcement agencies shall report "information relating to crimes that are motivated by prejudice, hatred, or advocacy of violence" to the Department of Public Safety. Tex. Gov't Code § 411.046. Atkins does not claim

10

that the City failed in its reporting obligations, but even if the Fort Worth police failed to report information about a hate crime committed against Atkins, he could not recover for this violation because the relevant chapter of the Texas Government Code does not provide a private right of action. *See* Tex. Gov't Code, Subtitle B, Chapter 411; ECF Nos. 1, 9. Atkins also seeks to recover under the Texas Hate Crimes Act, but this Act is codified as a criminal statute and likewise does not provide a private right of action. *See* Tex. Code Crim. Pro. Art. 42.014; Tex. Penal Code § 12.47. Fundamentally, as explained above, the City cannot be liable for his claim of false arrest. Because no private cause of action exists for these claims under Texas law, the Court cannot grant relief.

### F.    Atkins does not state a claim for a *Brady* violation.

In Atkins's Response to the Show Cause Order, he alleges that the City violated *Brady v. Maryland*, 373 U.S. 83 (1963). ECF No. 9 at 3. He argues that the City violated the *Brady* doctrine by failing to acknowledge exonerating evidence, including surveillance records from his apartment complex; failing to file charges against the neighbor who allegedly assaulted him; and omitting the actions of his neighbor in the police report. ECF No. 9 at 1–3.

The *Brady* doctrine, which requires a prosecutor to disclose all evidence favorable to a criminal defendant, only applies to criminal prosecutions, and Atkins does not allege that he was prosecuted. ECF Nos. 1, 9; *see Beall v. Cockrell*, 174 F. Supp. 2d 512, 520–21 (N.D. Tex. 2001) (citing *Brady v. Maryland*, 373 U.S. 83 (1963)). Instead, he alleges that a Tarrant County grand jury returned a no-bill vote and determined that there was no probable cause for his arrest. ECF No. 9 at 1. Because Atkins does not allege that he was prosecuted, *Brady* does not apply, and the Court cannot grant relief.

### G.    Atkins does not state a claim under the Federal Tort Claims Act.

Atkins appears to allege in his Response to the Show Cause Order that the City violated

the Federal Tort Claims Act. ECF No. 9 at 2. "The Federal Tort Claims Act (FTCA) allows plaintiffs to seek damages from the United States for certain torts committed by federal employees." *Simmons v. Himmelreich*, ___ U.S. ___, 136 S. Ct. 1843, 1845 (2016) (citing 28 U.S.C. §§ 1346(b), 2674).

> The FTCA effects a limited waiver of sovereign immunity, affording federal court jurisdiction so that the United States is liable in tort "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. To prove that his claims are within the FTCA's waiver of sovereign immunity, [a plaintiff] must demonstrate that a defendant was (1) an employee of the federal government; (2) acting within the scope of his employment; and (3) liable under state law. *Eckers v. United States*, 358 F. App'x 551, 553 (5th Cir. 2009).

*Anaeme v. United States*, No. SA-12-CA-486-XR, 2012 WL 13148798, at *2 (W.D. Tex. Sept. 4, 2012), *rec. adopted*, 2012 WL 13148797 (W.D. Tex. Oct. 9, 2012). In this lawsuit, Atkins does not name any federal employee as a defendant or allege that any federal employee is liable to him for injury. *See* ECF Nos. 1, 9. He does not plead any facts that would allow the Court to reasonably infer that the City is liable under the FTCA. Because Atkins only alleges wrongdoing by Fort Worth police officers, any claims under the FTCA should be dismissed.

## IV.    CONCLUSION

Atkins does not state a claim under federal or state law, but courts generally allow plaintiffs at least one opportunity to amend following a Rule 12 dismissal on the pleadings. *Great Plains Tr. Co.*, 313 F.3d at 329. Moreover, "[w]hen a court dismisses all federal claims before trial, the general rule is to dismiss any pendent claims." *Bass v. Parkwood Hosp.*, 180 F.3d 234, 246 (5th Cir. 1999) (citing *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989)).

Accordingly, the undersigned **RECOMMENDS** that Judge Pittman **GRANT** the City's Motion to Dismiss, ECF No. 18; **DISMISS WITHOUT PREJUDICE** Atkins's state law claims; **DISMISS WITH PREJUDICE** Atkins's federal law claims; and allow Atkins an opportunity to file an amended complaint that complies with the Federal Rules of Civil Procedure and addresses

the deficiencies noted in this Findings, Conclusions, and Recommendation within the fourteen days allotted for objections to this recommendation. If Atkins files an amended complaint within that time period, the City's Motion to Dismiss should be **DENIED** as moot, and the action should be allowed to proceed on the amended complaint. If Atkins does not amend his complaint within fourteen days, Judge Pittman should dismiss the federal claims **WITH PREJUDICE** and dismiss the pendent state law claims **WITHOUT PREJUDICE** so that Atkins may refile them in the appropriate state court. *Id.*

A copy of this Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Findings, Conclusions, and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

**SIGNED** on August 6, 2020.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE